IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

BRIAN COATS,

    Plaintiff,

v.                                            CIVIL ACTION NO. 3:08-0068

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

**MEMORANDUM ORDER**

       In this action, filed under the provisions of 42 U.S.C. § 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

       Plaintiff filed his application on December 2, 2002, alleging disability as a consequence of emphysema, hepatitis, seizures, extreme fatigue, hand injuries, depression and ADHD. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed a civil action seeking review of the Commissioner's decision.[1] The Court, perceiving deficiencies in the record, remanded the case for further proceedings. Following the submission of additional evidence and a supplemental hearing,

---

[1] See, Civil Action No. 3:05-0666.

an administrative law judge again found plaintiff not disabled, and this decision became the final decision of the Commissioner when the Appeals Council again denied plaintiff's request for review. Plaintiff then filed this action seeking review of the Commissioner's decision.

At the time of the most recent administrative decision, plaintiff was fifty-one years of age and had obtained a 6th grade education. He has no past relevant employment experience. In his decision, the administrative law judge determined that plaintiff suffers from chronic obstructive pulmonary disease, degenerative spurring in the lumbar and cervical spine, degenerative joint disease of the shoulders and knees, borderline intellectual functioning, alcohol dependence, and a depressive disorder not otherwise specified, impairments he considered severe. Concluding that plaintiff had the residual functional capacity for a limited range of light level work, that he experienced significant limitations on his mental functioning due to alcohol use, and relying on the testimony of a vocational expert, the administrative law judge determined that jobs did not "exist in significant numbers in the national economy that [plaintiff could] perform." In the absence of substance abuse, the administrative law judge determined he would have the same physical abilities but less significant mental limitations, and, relying on Rule 202.17 of the Medical-Vocational Guidelines[2] as well as the testimony of a vocational expert, he found plaintiff not disabled, concluding that his alcohol abuse was a "contributing factor material" to the finding of disability.[3] In light of this finding, he determined plaintiff was not entitled to benefits.

---

[2] 20 C.F.R. Pt. 404, Subpart P, App. 2, Table No. 2.

[3] "A claimant will not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Under the statute, and the regulations, the issue is whether a claimant could perform qualifying work if he "stopped using drugs or alcohol." 20 C.F.R. § 416.935(b).

Plaintiff's history of substance abuse is lengthy, and he has been hospitalized for treatment a number of times, primarily in the 1980's and 1990's. Though he has experienced periods of sobriety during the time covered by his application, the administrative law judge observed, and the record confirms, that plaintiff has consistently begun drinking again and was doing so at the time of the most recent hearing and medical evaluations. Because plaintiff's drinking resulted in significant problems getting along with others, the administrative law judge found him disabled; however, relying on evidence of his mental status during at least one period of sobriety, as well as the provisions in 20 C.F.R. § 416.935, he concluded that plaintiff would not be disabled absent his alcohol abuse. Thus, as noted, he determined this was a "contributing factor material" to his finding of disability, which makes plaintiff ineligible for benefits.

With or without alcohol abuse, plaintiff was found by the administrative law judge to have a physical residual functional capacity for light level work with an ability to stand/walk six hours total per day, no more than two hours without interruption; sit six hours total, three to four hours without interruption; occasionally climb, balance, stoop, crouch and crawl; never climb ladders, ropes or scaffolds; and needs to avoid temperature extremes, excessive dust, fumes, gases, high humidity, work at unprotected heights or around dangerous, moving machinery and exposure to vibration. Also, he should avoid overhead reaching. Without the effects of alcohol, plaintiff would have "fair" ability (limited but satisfactory) or better in all aspects of work-related mental functioning.

Plaintiff raises several objections to the administrative law judge's decision. First, he contends the administrative law judge's conclusions with regard to his Hepatitis C are not supported by substantial evidence and that he ignored some of the evidence in concluding this was not a severe

3

impairment. The administrative law judge considered the medical reports, observing that earlier reports did not reflect abdominal problems or other symptoms related to the Hepatitis C diagnosis. He noted that more recent records had shown confirmation of this illness by liver biopsy, but a May 2007 report reflected plaintiff had denied having any fatigue or taking any medication. Plaintiff cites to other instances in the record where he reported having fatigue, but there appears to be no clear connection between these complaints and the diagnosis of Hepatitis C.

The Commissioner also points out that the process of obtaining a liver biopsy and other testing to definitely confirm the diagnosis of Hepatitis C and allow the doctors to begin treatment could not move forward in the Fall of 2006 because plaintiff was still drinking. His physician related he could not begin treatment until there had been six months of sobriety. Then, in May of 2007, when treatment could be started plaintiff requested a delay of three months because his son was going to be visiting him for the summer. If this condition were causing the significant limitations plaintiff alleges, it seems likely he would have begun treatment much sooner than he did.

The medical expert, Dr. Saladin, acknowledged the seriousness of this illness but indicated that from his review of the record plaintiff had not yet suffered significant limitations resulting from it. Even if the fatigue about which plaintiff occasionally complained were connected to this illness, there was no showing that this symptom "significantly limit[ed]" his physical ability to do basic work activities[4] as required for an impairment to be found "severe." The Court concludes the administrative law judge's findings as to plaintiff's Hepatitis C have substantial support in the record, and plaintiff's argument to the contrary is not persuasive.

---

[4] 20 C.F.R. § 416.920(c).

Next, plaintiff argues the administrative law judge incorrectly determined what his psychological limitations were when he was abstinent from alcohol. The administrative law judge found that, with alcohol abuse, he had a "poor ability" (seriously limited but not precluded) to relate to co-workers; to deal with the public, supervisors and work stress; and to relate predictably in social situations, characteristics which the vocational expert testified would preclude him from being able to work. If plaintiff stopped drinking, he would have a "fair" (limited but satisfactory) ability in these and several other areas, and, according to the vocational expert, there would be jobs he could perform.

In making his findings, the administrative law judge noted in particular that during plaintiff's periods of sobriety, psychological examiners did not diagnose a personality disorder, and plaintiff admitted that when he was not drinking he did not get into fights and generally got along better with others. The administrative law judge thus concluded that the behaviors which examiners felt were indicative of antisocial personality disorder, or mixed personality disorder as found by the medical expert, were substance induced, and the resulting significant limitations were related to that substance use.

Plaintiff objects to this conclusion, claiming it is a medical judgment which is beyond the administrative law judge's authority to make. The Court finds, to the contrary, that the administrative law judge's conclusions are well-reasoned, based on a thorough review of the evidence and amply supported by that evidence. As the administrative law judge observed, plaintiff reported to Dr. Todd, who examined him at the Prestera Center on May 15, 2003, that after being diagnosed with Hepatitis C in late 2002 he had quit drinking and had been sober for six months at the time of this

appointment.[5] The administrative law judge noted that Dr. Todd did not diagnose a personality disorder as Dr. Frederick had a few months earlier. Dr. Todd had also observed plaintiff's drinking appeared to be "associated closely with acting out and violent behaviors where he had been in multiple fights throughout his life." Dr. Todd related plaintiff's report that these situations had not been occurring over the previous two years and that he (plaintiff) felt he had changed his attitude about engaging in this kind of conduct with others.

At a psychological consultative exam conducted by Penny Perdue, M.A., on November 18, 2004, plaintiff reported he had not used alcohol for about two years.[6] When discussing his lengthy legal history with this examiner, plaintiff acknowledged that most of his criminal behavior involved alcohol. Ms. Perdue, like Dr. Todd, also declined to diagnose antisocial personality disorder, explaining that "the reported behaviors suggestive of this appear to be alcohol related."

The administrative law judge also concluded that plaintiff's later claims of continuing sobriety were less than credible as reports from his treating physician reflected in May and August 2006 that he continued to use alcohol, and, as noted, on October 16, 2006 it was determined plaintiff could not start the anti-viral therapy for his Hepatitis C because he continued to drink and needed

---

[5]The first consultative exam by Dr. Frederick in January 2003 indicates plaintiff was drinking at this time as does a January 17, 2003 report from the emergency room at St. Mary's Medical Center where he was treated for a head wound resulting from a fight. By February 5, 2003, the date of a consultative physical exam with Dr. Nutter, plaintiff reported he had stopped drinking, however, and there is no indication of any further alcohol abuse prior to Dr. Todd's evaluation.

[6]The only reports of treatment between Dr. Todd's evaluation and Ms. Perdue's related to an incident in early September 2003 when plaintiff was attacked by some people in front of his residence. He reported, both at the emergency room and when evaluated by an orthopedic surgeon five days later, that he was not using alcohol at that time

six months of sobriety prior to initiating that treatment. Apparently plaintiff ceased drinking shortly after this appointment because in early May 2007 he was eligible to begin the treatment.

As for the diagnosis of antisocial personality disorder by Dr. Frederick after his second consultative exam on October 24, 2006, the administrative law judge noted plaintiff was not truthful with this examiner about his most recent alcohol use, which he had related was four months earlier. The administrative law judge reasoned that, since plaintiff was still drinking, the diagnosis of a personality disorder was consistent with his conclusions about the connection between the two.

As the administrative law judge found, plaintiff's testimony was also very revealing. He stated that the "major factor" in his bad behavior was his drinking, indicating his ability to get along with others had also improved as had his depression, when he was sober. The administrative law judge's conclusion that plaintiff's social limitations would be no greater than "fair" is well-supported by the substantial evidence in the record.

In his discussion, the administrative law judge also addressed the opinion of the medical expert who had reviewed the evidence. As he noted, however, this physician reviewed the record prior to the submission of the treating physician's notes and, therefore, he failed to appreciate that plaintiff had begun drinking again as of the time of Dr. Frederick's most recent report. He concluded that the social limitations assessed by the medical expert were "influenced by incorrect data – the assumption of continued sobriety at the time of the recent consultative exam." He thus concluded plaintiff's social functioning would be far less limited than this source had assessed.

Plaintiff's final objection to the Commissioner's decision is that the vocational expert's testimony and, specifically, his concern over a Global Assessment of Functioning ("GAF") rating[7] does not support the administrative law judge's finding that he could perform other work. After the vocational expert responded to the administrative law judge's hypothetical questions, citing other jobs plaintiff could perform given his age, education, work experience and residual functional capacity, plaintiff's counsel asked him if there was anything else in the file he found vocationally significant. This witness responded that the GAF ratings he had were "quite low" and would "imply difficulty" maintaining social functioning and employment. The rating to which the vocational expert refers is in the report of Dr. Todd's May 2003 evaluation wherein he expressed the opinion that plaintiff's GAF at the time of the exam was forty-five, consistent with "serious" symptoms or serious impairment in social or occupational functioning.[8] This examiner did note that plaintiff's highest GAF in the past year was fifty-five, consistent with moderate symptoms or moderate impairment in social or occupational functioning.[9]

As the Commissioner observes, this is the only rating of this type in the record, even though plaintiff was evaluated by psychologists on three other occasions. The comments, observations and diagnoses from these other psychologists do not indicate they observed symptoms of this severity. Even if this rating were accurate, there is no evidence plaintiff's functioning stayed at this level for

---

[7]The GAF is one way a psychologist can express an opinion of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, American Psychiatric Association, 1994 at 30.

[8]Id. at 32.

[9]Id.

twelve months.[10] The Court concludes, therefore, that plaintiff's objection to the administrative law judge's acceptance of the vocational expert testimony is without merit.

Review of the record establishes to the Court's satisfaction that the administrative law judge's findings with respect to plaintiff's impairments and their severity, the resultant work-related limitations, the weight given various medical opinions, the assessment of plaintiff's credibility and the vocational expert's testimony regarding other work plaintiff could perform are supported by substantial evidence. Under such circumstances, the decision of the Commissioner must be affirmed.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: November 24, 2009

MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

---

[10]See, 20 C.F.R. § 416.909.